1 | ANDREW VAN ORNUM (Bar No. 230482)
VINCENT G. SEBASTINELLI (Bar No. 311994)
2 | VARELA, LEE, METZ & GUARINO, LLP
333 Bush Street, Suite 1500
3 | San Francisco, CA  94104
Telephone:   415-623-7000
4 | Facsimile:   415-623-7001
Emails:   avanornum@vlmglaw.com
5 |          vsebastinelli@vlmglaw.com

6 | Attorneys for Plaintiff
TRAVELERS CASUALTY AND SURETY
7 | COMPANY OF AMERICA

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO DIVISION**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, | Case No. |
| Plaintiff, | **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S COMPLAINT FOR:** |
| v. | |
| COYLE/RENO JOINT VENTURE, a California General Partnership; COYLE RESIDENTIAL, INC., a California Corporation; RENO CONTRACTING, INC., a California Corporation; PATRICK COYLE, an individual and partner of Coyle Residential, Inc.; MATTHEW RENO, an individual, inclusive, | **1) BREACH OF CONTRACT 2) SPECIFIC PERFORMANCE 3) PROMISSORY ESTOPPEL 4) INJUNCTIVE RELIEF/QUIA TIMET 5) DECLARATORY RELIEF** |
| Defendants. | |

Plaintiff Travelers Casualty and Surety Company of America ("Travelers") alleges as follows:

## THE PARTIES

1.     Travelers is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business and headquarters in State of Connecticut, the place where Travelers' officers direct, control and coordinate its activities.  Travelers is an admitted surety insurer in the State of California, among other jurisdictions, in the course of which it issues contract surety bonds, among other bonds.

2.      Travelers is informed and believes and thereon alleges that defendant Coyle/Reno, a California Joint Venture ("Principal") is a joint venture organized and existing under the laws of the State of California and doing business in the County of Santa Clara.

3.      Travelers is informed and believes and thereon alleges that defendant Coyle Residential, Inc., ("Coyle") is a corporation organized and existing under the laws of the State of California with its principal place of business in the City of Berkeley, California.

4.      Travelers is informed and believes and thereon alleges that defendant Reno Contracting, Inc. ("Reno") is a corporation organized and existing under the laws of the State of California with its principal place of business in San Diego, California.

5.      Travelers is informed and believes and thereon alleges that defendant Patrick Coyle is a natural person residing in the City of Berkley, California.

6.      Travelers is informed and believes and thereon alleges that defendant Matthew Reno is a natural person residing in the City of San Diego, California.

7.      Collectively, defendants Principal, Coyle, Reno, Patrick Coyle, and Matthew Reno shall be referred to as "Indemnitors."

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity exists among the parties.

9.      Venue is proper in the United States District Court for the Northern District of California, San Francisco Division. Defendant Patrick Coyle is a resident of the City of Berkeley, Alameda County, California and defendant Coyle Residential, Inc. has its principal place of business in the City of Berkeley, Alameda County, California. Furthermore, the contracts to be performed were to be performed within the Northern District of California. Venue is proper under subdivisions (b)(1) and (b)(2) of 28 U.S.C. § 1391, and the intra-District assignment to the San Francisco Division is proper under Local Rule 3-2.

///

///

## GENERAL ALLEGATIONS

### A.      The Brandon Street Apartment Project

10.     On or about June 8, 2012, Riverview Capital Investment, LLC ("Riverview") and Principal entered into a contract (the "Bonded Contract") priced at approximately $43 million for Principal to construct 271 apartment units, parking garage and other site improvements on the real property located at 251 Brandon Street, San Jose, California, pursuant to a design by Riverview (the "Project").

11.     Commencing on or around June 12, 2012, Principal commenced performance of the Bonded Contract, with an anticipated completion date in 2014.

### B.      The Bonds and Indemnity Agreements

12.     As part of the Bonded Contract, Principal was to provide surety payment and performance bonds for the benefit of the Project Owner, Riverview, and subcontractors and suppliers of labor, material and equipment for the Project.  Indemnitors requested that Travelers furnish the surety bonds required for the Bonded Contract.

13.     As partial consideration for issuing the Bonds on behalf of the Indemnitors, on or about July 9, 2012, Principal, Patrick Coyle and Coyle executed a General Agreement of Indemnity ("Coyle GAI") with Travelers through which each and all of them agreed to, in part, exonerate, indemnify and hold Travelers harmless from and against all Loss.  A true and correct copy of the Coyle GAI is attached hereto as **Exhibit A** and is hereby incorporated by reference herein as if set forth in full.

14.     Since at least 2001, Reno and Matt Reno had an ongoing business relationship and indemnity obligation to Travelers.  As partial consideration for refraining from canceling one or more bonds and executing and/or delivering one or more future bonds, on or about July 25, 2014, Reno and Matt Reno executed a General Agreement of Indemnity ("Reno GAI") with Travelers through which each and all of them agreed to, in part, exonerate, indemnify and hold Travelers harmless from and against all Loss in connection with, without limitation, any and all bonds, undertakings and guarantees, whether executed or procured before, on, or after the execution of the

- 3 -

GAI.  A true and correct copy of the GAI is attached hereto as **Exhibit B** and is hereby incorporated by reference herein as if set forth in full.

15.    The Coyle GAI and Reno GAI shall collectively be referred to as the "GAIs."

16.    Pursuant to the GAIs, Indemnitors, among other promises, agreed to jointly and severally,

> [E]xonerate, indemnify and save [Travelers] harmless from and against all Loss.  An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Amounts due to [Travelers] shall be payable upon demand.

17.    Pursuant to the GAIs, Indemnitors, among other promises, agreed to protect Travelers if any liability exists or is asserted against Travelers on the Bonds, by, among other things, taking the following steps to provide collateral for the liability:

> Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss.  Indemnitors further agree to deposit with [Travelers], upon demand, an amount equal to the value of any asset or Contract funds improperly diverted by any Indemnitor.  Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any Loss or unpaid premium on any Bond. [Travelers] shall have no duty to invest, or provide interest on, the deposit.  Indemnitors agree that [Travelers] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with provision of this paragraph.

18.    In addition, the GAIs provided Travelers "the right in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against the Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors."  In the event of such payment or settlement, the GAIs provided that "[Travelers] shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments."

19.    In late February 2013, Travelers executed and delivered, at the request of Indemnitors, Performance Bond and Payment Bond number 105821626 (the "Performance Bond"

and "Payment Bond") in the penal sum of $42,929,763 for the benefit of Riverview and subcontractors and suppliers of labor, materials and equipment in connection with the Bonded Contract and Project.

**C.   Claims On The Bonds And Litigation**

20.   Since July of 2013, a number of Principal's subcontractors and suppliers on the Bonded Contract asserted that Principal failed to pay for labor, material, and equipment in connection with the Project.   Ultimately, Travelers has received claims on the Bonds from subcontractors and suppliers in connection with the Bonded Contract totaling in excess of $5 million.

21.   The claimants include but are not limited to, Helix Electric, Inc., Sanco Pipelines, Inc., Silverline Construction, Grey Mountain, Ghilotti Construction, LARK Industries, Inc. dba Residential Design Services, S. William, Inc., Blossom Valley Construction, Insight Glass, Whirlpool Corporation, International Protection and Investigation, Insulflo, Incorporated, Interior Trim Specialists, Inc., Daniel L. Marks dba Marina Plumbing Company, Automatic Fire Sprinklers, Inc., MCH Electric, MMV Steel, Inc., among others (collectively, "Subcontractor Claimants").

22.   Many of the Subcontractor Claimants asserted mechanics liens and stop payment notices in connection with the Project.  Based on requests by Indemnitors, Travelers also furnished stop payment notice release bonds and mechanics lien release bonds.  In addition, Travelers has executed and delivered other bonds on behalf of Indemnitors in connection with other projects, including for the West Park Apartment Project (Civita Apartment Project No. 2). A table listing "Other Bonds" is as follows:

| Bond No. | Obligee | Bond Amount | Effective Date |
|---|---|---|---|
| 105891531 | QF West Park LLC | $87,840,000 | 5/31/2013 |
| 106048895 | Riverview Capital Investment LLC | $4,869,018 | 8/22/2016 |
| 106048896 | Silverline Construction Inc. | $2,834,230 | 8/22/2016 |
| 106167476 | MMV Steel Construction Inc. | $131,055 | 11/18/2016 |
| 106167479 | Grey Mountain Concrete Inc. | $444,408 | 11/18/2016 |
| 106167483 | Ghilotti Construction Co., Inc. | $115,471 | 12/19/2016 |
| 106167484 | Riverview Capital Investment LLC | $115,471 | 12/19/2016 |
| 106370651 | TL Fab LP | $255,846 | 10/28/2016 |
| 106370660 | Custon Engineered Openings | $40,899 | 1/22/2017 |

COMPLAINT OF TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

| 106370664 | DSM Masonry Concrete & Tile Inc. | $250,116 | 2/24/2017 |
| 106470638 | Axa Equitable Life Insurance Co. | $326,031 | 4/5/2017 |
| 106470646 | TL Fab LP | $513,016 | 5/16/2016 |
| 106540268 | JP Witherow Roofing Co. | $24,500 | 9/23/2016 |
| 106540269 | Haier US Appliance Solutions | $297,364 | 9/23/2016 |

23.    On May 29, 2015, Riverview issued a "Notice of Default and Intent to Terminate the Contract" letter alleging that Principal was in default and that Riverview intended to terminate Principal's right to proceed under the Bonded Contract.

24.    On June 8, 2015, Riverview issued a "Notice of Termination of the Contract" that purported to terminate Principal's right to proceed under the Bonded Contract and included a demand on the Performance Bond furnished by Travelers.

25.    On or about March 30, 2016, Riverview filed a cross-complaint naming Travelers as a cross-defendant on the Performance Bond in a consolidated set of actions pending Superior Court of Santa Clara County, Lead Case No. 1-13-CV-256329, involving disputes and claims arising out of the Project, including without limitation, actions initiated by Subcontractor Claimants. The Riverview cross-complaint alleges that Principal defaulted on the Bonded Contract and that under the Performance Bond, Travelers is liable for Riverview's costs to perform bonded work, liquidated damages, and payments made by Riverview to Principal in excess of the requirements of the Contract. As to liquidated damages, Riverview has asserted that it is entitled to over $19 million from Principal and Travelers.

26.    In connection with the various claims on Travelers' surety bonds, and in connection with the litigations, Travelers incurred "Loss," as defined under the GAIs. On or about April 7, 2016, Travelers made demand for reimbursement of certain incurred Loss from Principal, but Principal failed to respond or make any payment to Travelers.

27.    On or about July 21, 2016, and in accordance with its rights under the GAIs, Travelers sent a letter to Indemnitors stating that Indemnitors defaulted on their agreement to promptly procure the full and complete discharge of Travelers from any and all liability by reason of the Bonds, and demanding that they deposit collateral with Travelers in the amount of $2,500,857.91, which amount Travelers reasonably determined was the amount of claims submitted

- 6 -

by Principal's subcontractors and suppliers on the Bonded Contract together with a percentage factor for costs and attorney's fees (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit C** and is hereby incorporated by reference herein as if set forth in full.

28.     On August 11, 2016, Principal represented to Travelers that it would not substantively comply with Travelers' demand for indemnity. Indemnitors have failed and refused, and continue to fail and refuse, to deposit collateral in any amount with Travelers or to obtain Travelers' discharge from the Performance Bond and Payment Bond.

29.     In January 2017, Travelers wrote to Indemnitors demanding that Indemnitors resolve claims of certain Subcontractor Claimants, including Sanco Pipelines, Inc. ("Sanco") and Helix Electric, Inc. ("Helix"). Indemnitors failed to or refused to resolve said claims, and thereafter, Travelers entered into settlements with Sanco and Helix.

30.     On April 12, 2017, Travelers wrote to Indemnitors making demand for Loss incurred in connection with the payments to settle the Sanco and Helix claims. In particular, Travelers demanded reimbursement of $908,531.06 for those payments. Indemnitors, and each of them, have failed and refused to respond or make payment.

31.     Principal and Indemnitors, and each of them, have failed and refused, and continue to fail and refuse, to otherwise perform all of their obligations under the GAIs, and Travelers has incurred, and will continue to incur, Loss, costs, expenses, and fees, as a result of claims and demands on the Performance Bond, Payment Bond and Other Bonds, as a result of the failure of Indemnitors to perform or comply with the GAIs.

32.     Travelers has incurred, and will continue to incur, costs and expenses incurred in connection with investigating, paying or litigating the enforceability and liability, if any, for claims on the Performance Bond, Payment Bond and Other Bonds, and enforcing the GAIs, including but not limited to, legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract against All Defendants)**

33.     Travelers hereby incorporates each and every one of the above allegations by reference as though fully set forth herein.

34.     Principal and Indemnitors, and each of them, requested that Travelers issue the Bonds on behalf of Principal and Indemnitors.  Based on the representation by Indemnitors that they would indemnify Travelers, and otherwise would perform their obligations under the GAIs, and that their assets would be pledged to Travelers to satisfy all obligations under the GAIs, Travelers agreed to execute and deliver the Performance Bond, Payment Bond and Other Bonds.

35.     As partial consideration for Travelers' issuance of the Performance Bond, Payment Bond and Other Bonds, Indemnitors jointly and severally agreed under the express terms of the GAIs that each of them shall, among other things:

      a.     Exonerate, indemnify and save Travelers harmless from and against all Loss;

      b.     Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

      c.     Cause Travelers' obligations under the Bonds to be exonerated upon demand by Travelers;

      d.     Otherwise perform all obligations in the GAIs.

36.     Travelers has demanded that Indemnitors indemnify Travelers for all losses arising out of the Bonds, including fees, costs, and expenses Travelers has incurred and will incur by reason of having issued the Bonds.

37.     Travelers has demanded that Indemnitors deposit collateral with Travelers in an amount not more than the amount of all claims Travelers has received against the Performance Bond and Payment Bond.

38.     Travelers has demanded that Indemnitors cause any and all of Travelers' obligations under the Performance Bond and Payment Bond to be exonerated.

39.     Despite Travelers' demand to the Indemnitors to perform under the GAIs,

- 8 -

Indemnitors have failed and refused to, among other things:

    a.    Exonerate, indemnify and save Travelers harmless from and against all Loss;

    b.    Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

    c.    Cause Travelers' obligations under the Bonds to be exonerated upon demand by Travelers;

    d.    Otherwise perform all obligations in the GAIs.

40.    Travelers performed all of its duties and obligations under the GAIs except as for those duties and obligations excused by Indemnitors' breaches.

41.    Travelers' investigation and defense of claims asserted against the Performance Bond and Payment Bond has caused and will continue to cause Travelers to incur Loss, including without limitation, costs, expenses, and attorneys' fees.

42.    As a direct and proximate result of Travelers having issued the Performance Bond, Payment Bond and Other Bonds on behalf of Indemnitors, and as a result of Indemnitors' failure to comply with their obligations under the GAIs, Travelers has incurred, and will continue to incur, losses, including additional liability, losses, costs, expenses, and fees, as a result of executing the Performance Bond, Payment Bond and Other Bonds and as a result of the failure of Indemnitors to perform or comply with the GAIs.

43.    As a direct and proximate result of Travelers having issued the Performance Bond, Payment Bond and Other Bonds on behalf of Indemnitors, and as a result of Indemnitors' failure to comply with their obligations under the GAIs, Travelers has incurred, and will continue to incur, losses, costs and expenses incurred in connection with investigating, paying and/or litigating claims on the Bonds, and enforcing the GAIs, including but not limited to, loss payments, legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses.

44.    Indemnitors' material breaches of the GAIs were a substantial factor in causing Travelers damage in an amount to be proved at trial, but in no event less than $75,000.

WHEREFORE, Travelers prays for judgment against Indemnitors, jointly and severally, as

COMPLAINT OF TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

set forth below.

## SECOND CLAIM FOR RELIEF

### (Specific Performance of GAIs against All Defendants)

45.     Travelers hereby incorporates each and every one of the above allegations by reference as though fully set forth herein.

46.     Indemnitors requested and executed the Performance Bond, Payment Bond and Other Bonds with Travelers on behalf of the Indemnitors.  Based on the representation by the Indemnitors that they would indemnify Travelers, and otherwise would perform their obligations under the GAIs, and that their assets would be pledged to Travelers to satisfy all obligations under the GAIs, Travelers agreed to issue the Performance Bond, Payment Bond and Other Bonds.

47.     As partial consideration for Travelers' issuance of the Bonds, Indemnitors agreed under the express terms of the GAIs that each of them shall, among other things:

      a.     Exonerate, indemnify and save Travelers harmless from and against all Loss;

      b.     Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

      c.     Cause Travelers' obligations under the Bonds to be exonerated upon demand by Travelers;

      d.     Otherwise perform all obligations in the GAIs.

48.     Travelers has demanded that Indemnitors indemnify Travelers for all losses arising out of the Performance Bond, Payment Bond and Other Bonds, including fees, costs, and expenses Travelers has incurred and will incur by reason of having issued the Performance Bond, Payment Bond and Other Bonds.

49.     Travelers has demanded that Indemnitors deposit collateral with Travelers in an amount equal to the amount of all claims Travelers has received against the Performance Bond, Payment Bond and Other Bonds.

50.     Travelers has demanded that Indemnitors cause Travelers' obligations under the Performance Bond, Payment Bond and Other Bonds to be exonerated.

51.     Despite Travelers' demand to Indemnitors to perform under the GAIs, Indemnitors have failed and refused to, among other things:

      a.      Exonerate, indemnify and save Travelers harmless from and against all Loss;

      b.      Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

      c.      Cause Travelers' obligations under the Bonds to be exonerated upon demand by Travelers;

      d.      Otherwise perform all obligations in the GAIs.

52.     Travelers performed all of its duties and obligations under the GAIs except as for those duties and obligations excused by Indemnitors' breaches.

53.     Travelers is informed and believes and thereon alleges that Indemnitors will continue to attempt to avoid their obligations under the GAIs to indemnify and hold Travelers harmless by transferring and conveying their assets to satisfy obligations other than those covered by the Performance Bond, Payment Bond and Other Bonds and the GAIs.

54.     Travelers has no adequate remedy at law for the injuries currently being suffered. If Indemnitors are not required to perform their obligations under the GAIs, Travelers is informed and believes and thereon alleges that Indemnitors will render themselves insolvent, to the prejudice and irreparable harm of Travelers.  Further, Travelers is exposed to continued liability to the extent that Indemnitors continue to fail to exonerate Travelers from the Performance Bond, Payment Bond and Other Bonds.

WHEREFORE, Travelers prays for judgment against Indemnitors, jointly and severally, as set forth below.

### THIRD CLAIM FOR RELIEF

### (Promissory Estoppel against All Defendants)

55.     Travelers hereby incorporates each and every one of the above allegations by reference as though fully set forth herein.

56.     Indemnitors requested and executed the Performance Bond, Payment Bond and

- 11 -

Other Bonds with Travelers on behalf of the Indemnitors.  Based on the representation by the Indemnitors that they would indemnify Travelers, and otherwise would perform their obligations under the GAIs, and that their assets would be pledged to Travelers to satisfy all obligations under the GAIs, Travelers agreed to issue the Performance Bond, Payment Bond and Other Bonds.

57.     As partial consideration for Travelers's issuance of the Performance Bond, Payment Bond and Other Bonds, Indemnitors agreed under the express terms of the GAIs that each of them shall, among other things:

        a.     Exonerate, indemnify and save Travelers harmless from and against all Loss;

        b.     Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

        c.     Cause Travelers' obligations under the Performance Bond, Payment Bond and Other Bonds to be exonerated upon demand by Travelers;

        d.     Otherwise perform all obligations in the GAIs.

58.     Indemnitors made the above-referenced promises in order to induce Travelers to issue the Performance Bond, Payment Bond and Other Bonds on behalf of Indemnitors.

59.     Travelers reasonably relied on Indemnitors' promises in issuing the Performance Bond, Payment Bond and Other Bonds.

60.     As a direct consequence of Travelers' reasonable reliance on Indemnitors' promises, Travelers has suffered substantial detriment.

61.     Indemnitors' representations were a substantial factor in causing Travelers damage in an amount to be proved at trial, but in no event less than $75,000.

WHEREFORE, Travelers prays for judgment against Indemnitors, jointly and severally, as set forth below.

## FOURTH CLAIM FOR RELIEF

### (Injunctive Relief/Quia Timet against All Defendants)

62.     Travelers hereby incorporates each and every one of the above allegations by reference as though fully set forth herein.

- 12 -

63.     Indemnitors are obligated under the GAIs and the doctrine of Quia Timet to post collateral security to Travelers for all losses, expenses, fees and costs that Travelers may incur as a consequence of the Performance Bond, Payment Bond and Other Bonds issued on behalf of Indemnitors.

64.     Under the GAIs, funds paid or payable under Bonded Contract were designated funds for payment for labor, materials, supplies and equipment furnished for the Bonded Contract. Travelers is informed and believes that Indemnitors have received funds but have failed to pay said funds to persons contributing labor, materials, supplies and equipment to the Bonded Contract.

65.     Despite Travelers' demand to Indemnitors to perform under the GAIs, Indemnitors have failed and refused to, among other things:

    a.     Exonerate, indemnify and save Travelers harmless from and against all Loss;

    b.     Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

    c.     Cause Travelers' obligations under the Performance Bond, Payment Bond and Other Bonds to be exonerated upon demand by Travelers;

    d.     Otherwise perform all obligations in the GAIs.

66.     Travelers believes that Indemnitors have and will attempt to avoid their obligations to exonerate, indemnify, and keep indemnified Travelers under the terms of the GAIs by transferring and/or conveying their assets to satisfy obligations other than those covered by the Performance Bond, Payment Bond and Other Bonds or otherwise included within the scope of the GAIs, or liquidating their assets and avoiding the jurisdiction of this Court.

67.     Travelers performed all of its duties and obligations under the GAIs except as for those duties and obligations excused by Indemnitors' breaches.

68.     Travelers has no adequate remedy at law for the injuries currently being suffered. If Indemnitors are not required to perform their obligations under the GAIs, Travelers is informed and believes and thereon alleges that Indemnitors will render themselves insolvent, to the prejudice and irreparable harm of Travelers.  Further, Travelers is exposed to continued liability to the extent

- 13 -

that Indemnitors continue to fail to exonerate Travelers from the Performance Bond, Payment Bond and Other Bonds.

69.   As a proximate result of the conduct of Principal and Indemnitors, and each of them, Travelers has been or will be damaged so long as Indemnitors are able to circumvent their obligations to Travelers under the GAIs by transferring trust fund assets.  The full amount of this damage is in excess of $75,000.

70.   Travelers is entitled to receive a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Indemnitors, as well as their agents, servants, employees and all persons acting under, in concert with, or for them:  (a) to establish a joint control account for all contract funds paid on contracts covered by the Performance Bond, Payment Bond and Other Bonds, pursuant to the GAIs, (b) preventing Indemnitors from transferring trust fund assets, including from Indemnitors' banks.

71.   The harm Travelers will incur if injunctive relief is not granted will greatly exceed any harm that Indemnitors might sustain as a result of its issuance.

WHEREFORE, Travelers prays for judgment against Indemnitors as set forth below.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief against All Defendants)

72.   Travelers hereby incorporates each and every one of the above allegations by reference as though fully set forth herein.

73.   An actual controversy has arisen and now exists between Travelers, on one hand, and Indemnitors, on the other hand, in that Travelers contends, and Indemnitors deny, that pursuant to the GAIs, Indemnitors are obligated to do the following, among other things:

        a.   Exonerate, indemnify and save Travelers harmless from and against all Loss;

        b.   Deposit with Travelers, upon demand, an amount sufficient to discharge any Loss or anticipated Loss to be held as collateral;

        c.   Cause Travelers' obligations under the Performance Bond, Payment Bond and Other Bonds to be exonerated upon demand by Travelers;

- 14 -

d.      Otherwise perform all obligations in the GAIs.

74.      Travelers desires a judicial determination of the respective rights and duties of Travelers and Indemnitors with respect to the GAIs.  In particular, Travelers desires a declaration that, as a consequence of having executed the GAIs, Indemnitors have all of the obligations referenced above.

WHEREFORE, Travelers prays for judgment against Indemnitors as set forth below.

## PRAYER

WHEREFORE, Travelers prays for judgment as follows:

As to the First Cause of Action:

1.      For damages in an amount to be proved at trial, but in no event less than $75,000; and,

2.      For reasonable attorneys' fees.

As to the Second Cause of Action:

1.      For a court order requiring Indemnitors to specifically perform the following obligations under the GAIs:

a.  Exonerate, indemnify and save [Travelers] harmless from and against all Loss;

b.  Deposit with Travelers an amount of $2,500,857.91, or an amount otherwise sufficient to discharge any Loss or anticipated Loss to be held as collateral;

c.  Cause Travelers' obligations under the Performance Bond, Payment Bond and Other Bonds to be exonerated;

d.  Otherwise perform all obligations in the GAIs; and,

2.      For reasonable attorneys' fees.

As to the Third Cause of Action:

1.      For damages in an amount to be proved at trial, but in no event less than $75,000; and,

2.      For reasonable attorneys' fees.

As to the Fourth Cause of Action:

- 15 -

1       1.      For a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Indemnitors, and each of them, as well as their agents, servants, employees and all persons acting under, in concert with, or for them (a) to establish a joint control account for all contract funds paid on contracts covered by the sufficient to discharge any Loss or anticipated Loss to be held as collateral, pursuant to the GAIs, (b) from transferring their trust fund assets, including Indemnitors' banks.

As to the Fifth Cause of Action:

       1.      For a declaration of the rights of the parties to the GAIs as contended by Travelers; and,

       2.      For reasonable attorneys' fees.

On all Causes of Action:

       1.      For interest at the legal rate;

       2.      For costs of suit herein; and

       3.      For such other and further relief as the Court may deem necessary and proper.

Dated: May 30, 2017

                        **VARELA, LEE, METZ & GUARINO, LLP**

                        By: _____
                            Andrew Van Ornum
                            Vincent G. Sebastinelli
                            Attorneys for Plaintiff
                            TRAVELERS CASUALTY AND
                            SURETY COMPANY OF AMERICA

- 16 -