UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, A CONNECTICUT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>COYLE/RENO JOINT VENTURE, et al.,<br><br>Defendants. | Case No.17-cv-03141-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 35 |

Plaintiff Travelers Casualty and Surety Company of America ("Travelers") filed this action seeking to enforce surety indemnity agreements with Defendants Coyle/Reno Joint Venture, a California General Partnership ("Coyle/Reno"), Coyle Residential, Inc. ("Coyle"), Reno Contracting, Inc. ("Reno"), Patrick Coyle, and Matthew Reno (collectively "Defendants"). Travelers' motion for summary judgment on its breach of contract cause of action arising out of the surety indemnity agreements is now pending before the Court.[1] (Dkt. No. 35.) Having considered the parties' briefs and having had the benefit of oral argument on June 28, 2018, the Court GRANTS the motion for summary judgment. Because Defendants agreed to indemnify and hold Travelers harmless against any and all loss arising out of or related to the surety bonds Travelers furnished for Defendants' construction project, and there is no genuine dispute as to

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 23, 29.)

those losses, Travelers is entitled to judgment as a matter of law.

## BACKGROUND

### A. Factual Record

Travelers has had a business relationship with Reno and Matthew Reno since at least 2001 wherein the parties would enter into indemnity agreements and Travelers would execute surety bonds in partial consideration for Reno and Matthew Reno's indemnity obligation to Travelers. (Dkt. No. 37 (Harmon Decl.) at ¶ 8.) Because of this relationship, Coyle/Reno approached Travelers to provide the performance and payment bonds related to a construction contract Coyle/Reno had with Riverview to build an apartment building in San Jose, California (the "Riverview Project"). (*Id.*; *Id.* at 17 (Ex. 2, the Riverview Contract).[2])

In connection with the Riverview Project, Travelers executed a General Agreement of Indemnity with Reno and Matthew Reno on July 25, 2014. (Dkt. No. 37 at 37 (Ex. 3, Reno Indemnity Agreement).) Pursuant to the Reno Indemnity Agreement, Reno and Matthew Reno agreed to indemnify and hold Travelers harmless for any loss in connection with any and all bonds, undertakings and guarantees executed or procured before, on, or after the execution of the indemnity agreement. (*Id.*) The indemnification language reads as follows:

> **3. Indemnification and Hold Harmless:** Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company shall be payable upon demand.

(*Id.*) The Reno Indemnity Agreement also includes language allowing Travelers to resolve claims "in its sole discretion." (*Id.*)

> **4. Claim Settlement:** Company shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company shall be entitled to immediate reimbursement for any and all Loss incurred under belief it was necessary or expedient to make such

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2

payments.

(*Id.*) Loss is defined under the Indemnity Agreement as

> **Loss** - all loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including, but not limited to all loss and expense incurred by reason of Company's (1) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

(*Id.*)

Around this same time, Travelers also executed a General Agreement of Indemnity with Coyle/Reno, Patrick Coyle, and Coyle (the "Coyle Indemnity Agreement," and collectively with the Reno Indemnity Agreement, the "Indemnity Agreements"). The Coye Indemnity Agreement includes identical language requiring Coyle/Reno, Patrick Coyle, and Coyle to indemnify and hold Travelers harmless for any loss resulting from Travelers issuance of bonds on Coyle Reno's behalf. (Dkt. No. 37 at 10 (Ex. 1).) It also includes the same clause allowing Travelers to resolve any claims "in its sole discretion" and the same definition of "Loss." (*Id.*)

On January 31, 2013, Travelers executed and delivered a Performance Bond for $42,929,763 to Riverview pursuant to Riverview and Coyle/Reno's construction project. (Dkt. No. 37 at 43 (Ex. 4).) Six month later, Riverview sent Travelers a "Notice of Material Breaches of Contract and Demand to Perform" advising that Coyle/Reno was in default on the Riverview Contract and requesting that Travelers remedy the defaults as required under the Performance Bond. (*Id.* at 61 (Ex. 5).) Almost a year later, Riverview sent Coyle/Reno a "Further Notice of Default and Intent to Terminate the Contract" on which Travelers was copied. (*Id.* at 67 (Ex. 6).) The notice outlined various defaults and demanded that Travelers honor the Performance Bond as the guarantor of Coyle/Reno's obligations. (*Id.* at 70.) A little over a week later, on June 8, 2015, Riverview sent Coyle/Reno a notice terminating the Riverview Contract for cause. (*Id.* at 74 (Ex. 7).)

Riverview was engaged in litigation in Santa Clara County Superior Court, involving

3

disputes and claims arising out of the Riverview Project, including actions initiated by subcontractor claimants (the "Riverview Litigation"). On March 30, 2016, Riverview filed a cross-complaint naming Travelers as a cross-defendant on the Performance Bond in a consolidated set of actions pending in the Riverview Litigation. The Riverview cross-complaint alleged that Coyle/Reno defaulted on the Riverview Contract and that under the Performance Bond, Travelers was liable for Riverview's costs to complete the work and up to $20 million in liquidated damages. (Dkt. No. 37 at ¶ 14; *id.* at 78 (Ex. 8).)

A week later, Travelers sent a letter to Coyle/Reno's General Counsel, Andrew Kessler, stating that it had concerns regarding Coyle/Reno's ability to indemnify and hold Travelers harmless for liability under the Performance Bond in light of the approximately $5,000,000 in payment bond claims Travelers had received from 25 payment bond claimants. (*Id*. at 89 (Ex. 9).) Travelers requested that Coyle/Reno resolve the claims for which there was no defense, reimburse it for certain expenses, and meet with Travelers to discuss further steps. (*Id*. at 90.) Coyle/Reno failed to respond (*Id*. at ¶ 15), and on July 21, 2016, Travelers made a formal demand that Coyle/Reno comply with the Indemnity Agreement and deposit $2,500,857.91 with Travelers as collateral security on the Bonds and as collateral security of any indebtedness of the Indemnitors to the Surety. (*Id*. at 92 (Ex. 10).)

Since July 2013, 26 Coyle/Reno subcontractors and suppliers on the Bonded Contract have asserted that Coyle/Reno failed to pay for labor, material, and equipment in connection with the Project and have made claims totaling in excess of $5 million. The claimants include but are not limited to, Helix Electric, Inc., Sanco Pipelines, Inc., Silverline Construction, Grey Mountain, Ghilotti Construction, LARK Industries, Inc. dba Residential Design Services, S. William, Inc., Blossom Valley Construction, Interior Trim Specialists, Inc., Daniel L. Marks dba Marina Plumbing Company, Automatic Fire Sprinklers, Inc., MCH Electric, and MMV Steel, Inc., among others. (Dkt. No. 37 at ¶ 18.)

In addition, in 2015, two subcontractors—Sanco Pipeline, Inc., and Helix Electric, Inc.— brought suit against Travelers and Coyle/Reno in connection with the Riverview Project. (Dkt. No. 37 at ¶¶ 19-20; *Id*. at 97 (Ex. 11); *Id*. at 202 (Ex. 12).) Between November 2016 and February

4

2017, Travelers sent numerous emails to Coyle/Reno seeking an update regarding the status of the subcontractor claims, and the claims of Sanco and Helix in particular, and continuing to seek indemnification/reimbursement of the costs and expenses incurred to date. (*Id*. at 287-325 (Exs. 13-17).) On March 3, 2017, Travelers settled the claims of Sanco and Helix for $369,540.01 and $538,911.05, respectively. (*Id*. at 329 (Ex. 18); *Id*. at 338 (Ex. 19).) A month later, Travelers wrote to Defendants making a demand for the Loss incurred in connection with settlement of these claims, demanding $908,531.06. (Id. at 347 (Ex. 20.) Defendants have not responded to this demand. (Dkt. No. 37 at ¶ 28.) However, on August 14, 2017, Matthew Reno sent Travelers a letter stating that "it had emplored [sic] Travelers not to pay off these claims since the Owner had made claims against them which required us to file a cross-complaint to offset to the money the subs said they were due." (Dkt. No. 40-3 at 3.) In this same letter Reno stated that "it is important that Travelers understands that Reno does not agree with the approach the surety has taken or the full costs it is demanding in reimbursement." (*Id*. at 2.)

Travelers also negotiated a series of settlement agreements to resolve claims brought by other subcontractor claimants. Coyle/Reno signed each of these agreements, but did not pay the settlement amounts; instead, Travelers submitted payment on the claims. In particular, Travelers settled claims as follows: S. William, Inc., ($410,000.00); Blossom Valley Construction, Inc., ($75,000.00); MCH Electric, Inc., ($80,000.00); Interior Trim Specialists, Inc., ($250,000.00); Automatic Fire Sprinkler ($75,000.00); L.A.R.K. Industries dba Residential Design Services ($292,158.00); Daniel L. Marks, Inc., ($650,000.00). (Dkt. No. 37 at 365-441 (Exs. 21-27).)

Finally, in the Riverview Litigation, which lasted several years, Travelers incurred legal costs including ESI, depositions, written discovery, drafting pleadings, motion practice, and trial preparation. (Dkt. No. 37 at ¶ 30.) In October 2017, the parties to the Riverview Litigation engaged in mediation and entered into a settlement resolving Riverview's claims against Coyle/Reno and Travelers, and Coyle/Reno's claims against Riverview. (*Id*. at ¶ 31.) As a result of this settlement, Travelers paid Riverview $3,309,394.73. (*Id*. at ¶ 31; *Id.* at 453 (Ex. 28).)

In total, Travelers has incurred $6,654,918.89 in Loss under the Indemnity Agreements that has not been repaid by Defendants. (Dkt. No. 37 at ¶ 32; *Id*. at 492 (Ex. 29).)

**B. Procedural Background**

Travelers filed this civil action in May of 2017 while the Riverview Litigation was still pending. Travelers pleads five claims for relief: (1) breach of contract; (2) specific performance; (3) promissory estoppel; (4) injunctive relief/Quia Timet; and (5) declaratory relief. (Dkt. No. 1.) The Coyle/Reno, Matthew Reno, and Reno Defendants answered (Dkt. No. 12) and the Patrick Coyle and Coyle Residential Defendants answered and cross-claimed against the Reno Defendants for express indemnity and apportionment (Dkt. No. 20). The parties appeared for a Case Management Conference in April 2018 and reported the case was close to settlement. (Dkt. No. 34.) Then, a little over a month later, Travelers filed the now pending motion for summary judgment. (Dkt. No. 20.) The Reno Defendants filed an opposition in which the Coyle Defendants joined. (Dkt. Nos. 40 & 41.)

Fact discovery closed on June 29, 2018. (Dkt. No. 25.) A week prior, Travelers moved to continue the fact discovery deadline because it had obtained no discovery from the Reno Defendants and it has agreed with the Coyle Defendants that certain discovery can occur in July. (Dkt. No. 43.) At the hearing on the motion for summary judgment on June 28, the Court declined to extend the fact discovery deadline, but advised Travelers that it had seven days under the local rules to move to compel after the close of the discovery deadline and that the parties were free to agree among themselves to conduct discovery after the deadline (but the Local Rule deadline for motions to compel still applies). A bench trial is scheduled to begin September 4, 2018.

**DISCUSSION**

Travelers moves for summary judgment on its first claim for relief: that Defendants breached their contract with Travelers to indemnify and hold Travelers harmless from all losses under the parties' Indemnity Agreements. The Reno Defendants—on behalf of themselves and the other Defendants—insist that questions of fact preclude summary judgment on this claim. Defendants, however, have failed to offer *evidence* of any disputes of fact which would preclude summary judgment on this claim.

**A. Defendants' Rule 56(d) Request**

Defendants first argue that discovery is incomplete and summary judgment is thus

6

premature. Under Rule 56(d), a party can seek additional time to respond to a motion for summary judgment to "allow [it] time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P 56(d)(2). To obtain such relief, the party must show by declaration "that, for specified reasons it *cannot* present facts essential to justify its opposition." Fed. R. Civ. P 56(d) (emphasis added). Defendants have submitted a Declaration from Andrew Kessler, Reno's General Counsel, which attests that no discovery has been conducted and that he would like to take two depositions to "discover[] the facts known" and "substantiat[e] the facts and circumstances surrounding" Travelers' counsels' decisions. The problem is that *no* discovery has occurred because Defendants have not sought to obtain *any* discovery—notwithstanding that discovery was set to close the day after this motion was heard: June 29. Defendants cannot meet the Rule 56(d) standard because they have not even attempted to obtain the discovery. *See Big Lagoon Rancheria v. California*, 789 F.3d 947, 955 (9th Cir. 2015). Nor have Defendants alleged that any discovery it might obtain would preclude summary judgment. *See Getz v. Boeing Co.*, 654 F.3d 852, 868 (9th Cir. 2011) (noting that the district court did not abuse its discretion in denying a Rule 56(d) request where the plaintiff failed to "proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment."). Defendants' Rule 56(d) request is therefore denied.

**B. Breach of the Indemnity Agreement**

California law has long recognized the right of a surety, such as Travelers, to indemnification under the terms of a written indemnity agreement. *See, e.g.*, *Fid. & Deposit Co. of Md. v. Whitson*, 187 Cal. App. 2d 751, 756 (1960). "An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract." *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968 (1993). To establish a valid claim for breach of an indemnity agreement under California law, Plaintiff must demonstrate the existence of an indemnity agreement, Plaintiff's performance under the agreement, breach of the agreement, and damages. *See Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

There is no dispute that the parties agreed to the Indemnity Agreements at issue. Nor is

7

there any dispute that each Agreement provides Travelers with broad discretion to settle claims for payment. (Dkt. No. 37 at 10, 37.) The Indemnity Agreements both state that "[a]n itemized, sworn statement by employee of the Company...shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability." (*Id.*)

Once the moving party shows that the indemnity agreement contains such a prima facie evidence clause, the burden shifts to the non-moving side to show that the amount claimed is incorrect (i.e., that Travelers did not pay what it claims to have paid) or that Travelers acted in bad faith in making such payments. *See Travelers Cas. & Sur. Co. of Am. v. K.O.O. Constr., Inc.*, No. 16-CV-00518-JCS, 2016 WL 7324988, at *8 (N.D. Cal. Dec. 16, 2016) (concluding that "courts have routinely held that sort of burden shifting provision to be valid and enforceable in indemnity contracts" and collecting cases re: the same); *Cas. v. Dunmore*, No. 2:07-CV-02493-TLN-DB, 2016 WL 6611184, at *2 (E.D. Cal. Nov. 9, 2016) ("[a]ny alleged bad faith on behalf of a surety is a defense to liability that must be pleaded and proved by the defendants as opposed to constituting an element of a surety's case for breach of contract"); *see also Peter Culley & Assocs. v. Superior Court*, 10 Cal. App. 4th 1484, 1497 (1992), as modified on denial of reh'g (Dec. 16, 1992) ("The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect").

To meet its burden of showing bad faith, an indemnitee must show that the surety engaged in "objectively unreasonable conduct" in paying the claims for which the surety seeks indemnity. *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 483 (1996). "Good faith does not require perfection, or require that the surety had complete knowledge of the circumstances behind the claim before making its settlement decision." *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, No. 10CV2503 AJB DHB, 2012 WL 5928139, at *9 (S.D. Cal. Nov. 26, 2012) (internal citation and quotation marks omitted). Rather, it depends on "whether the surety believed in good faith that it was *either* necessary or desirable for it to act to protect its interests as a surety, or whether there was no rational justification for the sureties [sic] actions."

8

*Id.* (emphasis in original).

Here, Travelers submitted both a sworn statement from Travelers Senior Claims Counsel, Paul Harmon, as well as the settlement agreements and checks that it issued to resolve claims under the Performance Bond. Travelers thus proffered sufficient evidence under the prima facie evidence clause to shift the burden to Defendants to prove that (1) the amount Travelers seeks is incorrect, or (2) that Travelers engaged in "objectively unreasonable conduct" in handling its obligations under the Indemnity Agreements.

Defendants do not challenge the amounts Travelers seeks as actually paid by Travelers (putting aside attorneys' fees which will be addressed separately); instead, Defendants insist that Travelers acted unreasonably. Defendants, however, have failed to offer any *evidence* in support of this argument; instead, Defendants' opposition brief is replete with unsupported factual allegations. The only evidence Defendants offer is the Declaration of Andrew Kessler, Reno's General Counsel, but the Declaration does not create any genuine dispute of material fact. For example, Mr. Kessler attests that Coyle/Reno "disagree[d] with the manner in which the surety was administering the claim" and proffers a letter from Defendant Matthew Reno to Travelers wherein he states that "it is important that Travelers understands that Reno does not agree with the approach the surety has taken or the full costs it is demanding in reimbursement" and that it had "emplored [sic] Travelers not to pay off" the Helix and Sanco claims because "the Owner had made claims against them which required us to file a cross-complaint to offset to the money the subs said they were due." (Dkt. No. 40-1 at ¶ 9; Dkt. No. 40-3 at 2-3.) This letter does not support a finding by a trier of fact that Travelers acted in bad faith—it merely supports an inference that Reno disagreed with Travelers' decisions regarding settlement of certain claims. The analysis as to the Helix and Sanco settlements is similar. While Defendants offer evidence that they objected to the settlements, they have not produced any evidence that creates a genuine dispute as to whether the settlements were objectively unreasonable. Their opinion alone is insufficient to support their burden of proof. *See Highland*, 2012 WL 5928139, at *10 (rejecting a similar letter as sufficient to create a genuine dispute where "Defendants neither attached proof of their allegations with the letter originally sent to Travelers, nor did Defendants present the Court with

9

proof to support their allegations in their opposition to the current motion."); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (holding that "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

Defendants' contention that Travelers acted in bad faith by enticing Defendants to settle their claims with Riverview by offering Defendants a limitation of liability is likewise unsupported by any evidence. There is no evidence to support Mr. Kessler's conclusory declaration that Travelers and Coyle/Reno "agreed upon the principal terms of an Agreement which, most importantly, included a limitation of Coyle/Reno's liability to the surety." (Dkt. No. 401- at ¶ 15.) The Declaration references a "Term Sheet," but no Term Sheet is attached and the attached correspondence suggests that there was no meeting of the minds regarding any Term Sheet prior to the settlement with Riverview. (Dkt. No. 40-5 (email from Mr. Kessler to Travelers stating that the "Term Sheet between Travelers and Reno...should remain unfinalized until completion of the Indemnity trial against Silverline and Marina").) Despite his protestations to the contrary at oral argument, Mr. Kessler's unsupported legal conclusions are not evidence and do not create a genuine issue of material fact. *See FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1996) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

No rational trier of fact could find on this record that Defendants have met their burden to rebut Travelers' prima facie showing of liability, either by showing that Travelers did not actually incur the losses it claims, or by showing that Travelers did not pay the claims in good faith. Travelers' motion for partial summary judgment on the breach of contract claim is therefore GRANTED.

**B. Loss Includes Attorney's Fees**

Travelers also seeks as a Loss covered by the Indemnity Agreements $604,835.10 in attorney's fees and costs incurred in defending, investigating and resolving the bond claims. (Dkt. No. 37 ¶ 32; Dkt. No. 37 Ex. 30.) The Indemnity Agreements define Loss as "all loss and expense of any kind or nature, including attorneys' and other professional fees, which Company

incurs in connection with any Bond or this Agreement" (Dkt. No. 37 at 10; 37); thus, the fees and costs Travelers seeks are recoverable.

Defendants nonetheless complain that summary judgment on their obligation to indemnify Travelers must be denied because Travelers has failed to substantiate the reasonableness of the fees and costs sought. Not so. The presumption of recovery under the Indemnity Agreements based on the prima facie evidence clause applies equally to recovery of attorneys' fees since the indemnitors—Defendants—agreed to indemnify Travelers for all losses, including fees and costs, incurred in connection with bond claims. *See Cas. v. Dunmore*, No. 2:07-CV-02493-TLN-DB, 2016 WL 6611184, at *6 (E.D. Cal. Nov. 9, 2016) (concluding that a similar clause precluded the defendant from challenging the reasonableness of the fees because "the payment of Loss, including attorneys' fees, is at Plaintiff's sole discretion"); *see also Great Am. Ins. Co. v. Roadway Eng'g Works, Inc.*, No. 1:16-00070 WBS SKO, 2016 WL 5157651, at *6 (E.D. Cal. Sept. 21, 2016) (awarding damages including attorney's fees and costs where defendants failed to present any triable issue of material fact on amount of damages to rebut the statement of losses and expenses provided by the plaintiff).

Defendants' reliance on *Highland*, 2012 WL 5928139, at *12, is unpersuasive. First, there the court held that Travelers had to submit detailed time records to allow for the calculation of the lodestar. Travelers has done so here. Second, to the extent the court held that Travelers was required to submit declarations establishing the reasonableness of its hourly rate, this Court respectfully disagrees. Travelers has met its burden under the prima facie evidence clause to establish the loss in attorneys' fees and costs it incurred in connection with bond claims. Defendants thus have the burden to dispute the accuracy of the fees and costs sought or their reasonableness. They have not met that burden. Accordingly, Travelers' damages on the breach of contract claim includes attorney fees and costs incurred in connection with payment under the bonds.

**C. Travelers is entitled to Summary Judgment on Defendants' Affirmative Defenses**

Defendants have collectively pled 87 affirmative defenses. (Dkt. Nos. 12, 20.) Travelers moves for summary judgment because it is unaware of any facts which would support any of these

11

"boilerplate" affirmative defenses to the breach of contract claim given that the Indemnity Agreements establish Defendants' contractual obligation to indemnify Travelers. (Dkt. No. 35-1 at 16:13.) Where, as here, the nonmoving party (i.e., Defendants) has the burden of proof at trial, the moving party can meet its burden on summary judgment by pointing out that there is an absence of evidence to support the nonmoving party's case. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). If the movant meets its burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324. The nonmovant "may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076.

Travelers has met its burden on summary judgment by pointing out that there is an absence of evidence supporting Defendants' affirmative defenses. The burden therefore shifts to Defendants to come forward with evidence in support of their defenses. Defendants have failed to do so—their only response is to argue that discovery is incomplete. However, as noted above, Defendants do not meet the standard for Rule 56(d)—they have not conducted any discovery despite the impending close of discovery and they have not attested that additional discovery will provide them with the evidence necessary to support their affirmative defenses. Defendants have thus failed to meet their burden to designate specific facts showing that summary judgment is improper. Accordingly, Travelers' motion for summary judgment on Defendants' 87 affirmative defenses is GRANTED.

**CONCLUSION**

For the reasons stated above, Travelers' motion for summary judgment on the breach of contract claim and on Defendants' affirmative defenses is GRANTED. (Dkt. No. 35.)

The parties shall appear for a Case Management Conference on July 19, 2018 at 1:30 p.m. to discuss how to proceed on the remaining claims. A Joint Case Management Conference Statement is due July 12, 2018.

//

//

**IT IS SO ORDERED.**

Dated: July 9, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge